William P. Doyle and Crystal Gibson Doyle v. Commissioner.
Doyle v. Commissioner
Docket No. 69630.
United States Tax Court
T.C. Memo 1960-129; 1960 Tax Ct. Memo LEXIS 160; 19 T.C.M. (CCH) 677; T.C.M. (RIA) 60129; June 17, 1960
Leonard L. Cowan, Esq., 10 S. LaSalle Street, Chicago, Ill., for the petitioners. Erving Sodos, Esq., for the respondent. TIETJENS
Memorandum Opinion TIETJENS, Judge: The respondent determined a deficiency in income tax of $3,840.28 for the calendar year 1953. The sole issue for decision is whether the petitioners are entitled to a deduction for a loss upon sales of stocks. All the facts are stipulated and are so found. The petitioners' *161 return was filed with the director of internal revenue at Chicago, Illinois. Since the transactions were made by Crystal Gibson Doyle, she is sometimes hereinafter referred to as the petitioner. In January and February 1953, the petitioner purchased the following common stocks for the amounts stated: 700 shares Southern Pacific
$31,338.13
2,000 shares Avco Manufacturing Co.
16,487.34
1,000 shares Sunshine mines
10,753.81
On or before November 27, 1953, she deposited these stocks with her broker with instructions that they be used as collateral in her margin account to cover purchases on margin of the same number of shares of the same stocks to be made on or shortly after such date and then used on December 30, 1953, to cover short sales on the same number of shares of the same stocks. On November 27 and 28, 1953, she purchased 700 shares of Southern Pacific, 2,000 shares of Avco Manufacturing and 1,000 shares of Sunshine Mines common stock. The cost of these purchases was secured by the shares deposited as collateral in her margin account. At the same time she sold, by means of short sales, the same number of shares of the same stocks at the same market prices. *162 The cost of the stock purchased on November 27 and 28, 1953, was shown by her broker as a debit balance in her long account. The sales price received on the short sales of the same dates was shown as a credit balance in her short account. On December 30, 1953, pursuant to the petitioner's instructions, the broker covered the short sales with the deposited shares which had theretofore been held as collateral in her margin account to cover the shares purchased at the same time as the short sales. Her broker then closed the credit balance in the short account to the debit balance in the long account. Thereafter the petitioner held stock certificates representing the shares purchased on November 27 and 28, 1953. She had no out-of-pocket expenses from the dealings described except for broker's fees. She entered into the transactions of November and December 1953 with the intention of maintaining her investment position in the stocks named. It is stipulated that the use of the term "short sales" where it appears above, refers to sales made by the petitioner which were consummated by the delivery of stock certificates borrowed by the petitioner from her broker. On their return for *163 1953 the petitioners reported net income of $30,452.42, including $3,606.06 as excess of long-term capital gains over losses. They reported long-term capital gains of $42,316.28 and long-term capital losses of $38,710.22. The losses claimed included $14,770.31 claimed on account of transactions in stocks of the three corporations described above. The respondent determined that the petitioners had erroneously overstated long-term capital losses in the amount of $14,770.31. The respondent makes three contentions: first, that section 118(a) [1] of the Internal Revenue Code of 1939 bars the deduction for the loss claimed on the short sales because of the purchases made on the same dates; second, that the deduction is not allowable under any section of such Code, without considering the provisions of section 118(a); and third, that the loss should be disallowed becase the purchases and short sales on the same dates lacked economic substance and were consummated solely for tax avoidance purposes. *164 The petitioner, on the other hand, argues that the sales of stock on November 27 and 28, 1953, constituted "short sales" within the meaning of Reg. 118, sec. 39.117(g)-1(a) which states that, "For income tax purposes, a short sale is not deemed to be consummated until delivery of property to cover the short sale * * *." Following this tack, the petitioner contends that no property was delivered to cover the short sales until December 30, 1953 and, therefore, that since more than 30 days had elapsed between the dates of purchase of the identical shares (November 27 and 28, 1953) and December 30, 1953, section 118(a) does not apply. We think the petitioner's argument is faulty. In the first place the parties have stipulated that the term "short sales" refers to sales made by the petitioner "which were consummated by the delivery of stock certificates borrowed by (petitioner) from her broker." If this is true (and we see no reason not to accept it) the sales were "consummated" on November 27 and 28, 1953, and not on December 30, 1953. Thus, it appears the petitioner may have stipulated herself out of the question. She seems to agree that the stocks which she disposed of were disposed *165 of at the same time she acquired identical stocks which she continued to hold. That being so, the transactions fall squarely within section 118(a) and no deduction for the petitioner's losses may be allowed. Further, regardless of the use of the term "short sales" and its stipulated meaning herein, we think the facts bring section 118 into play. That section is not limited to losses sustained from sales of stock. The language is broad and covers "losses sustained from any sale or other disposition of shares of stock." It is our view that the petitioner, even if we were to hold she had not made a sale of her stock in November 1953, certainly made a disposition of it. So far as she was concerned, the transaction was closed on or before November 27, 1953. About that time the stock in question was delivered to her broker as collateral with instructions that it be used on December 30, 1953, to cover the "short sales" described in our findings of fact of the same number of shares of the same stocks. She was thereupon given credit for the sales price on her broker's books. So far as the facts show, she could have drawn down this credit at any time. All that was left to do was for the petitioner's *166 broker to replace the stocks which petitioner had borrowed from the broker, and the certificates for such shares had already been delivered to the broker by the petitioner for that purpose. The petitioner had thus closed her end of the transaction. On these facts we hold that the petitioner made a disposition of her stock within the meaning of section 118 and no deduction of the loss claimed to have been sustained on the transaction is allowable. Though not involving section 118 of the Internal Revenue Code of 1939 and thus not being dispositive of the case before us, reference is made to Charles H. Oshei, 31 B.T.A. 23; Frances Bartow Farr, Executrix, 33 B.T.A. 557; and Dee Furey Mott, 35 B.T.A. 195, affd. (C.A. 6) 103 F. 2d 1009, for helpful discussions of when losses are sustained on sales of stock and the differences between short sales and other sales of stock. It is not necessary to discuss the other contentions made by the respondent. Decision will be entered for the respondent. Footnotes
1. SEC. 118. LOSS FROM WASH SALES OF STOCK OR SECURITIES. (a) In the case of any loss claimed to have been sustained from any sale or other disposition of shares of stock or securities where it appears that, within a period beginning 30 days before the date of such sale or disposition and ending 30 days after such date, the taxpayer has acquired (by purchase or by an exchange upon which the entire amount of gain or loss was recognized by law), or has entered into a contract or option so to acquire, substantially identical stock or securities, then no deduction for the loss shall be allowed under section 23(e)(2); * * *↩